

FILED

02/15/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 8, 2016

## STATE OF TENNESSEE v. JASON LARRY RUSSO

**Appeal from the Circuit Court for Bedford County**
**No. 18035      F. Lee Russell, Judge**

_____

## No. M2016-00052-CCA-R3-CD
_____

In the Bedford County Circuit Court, the defendant, Jason Larry Russo, pled guilty to second offense driving on a revoked license, a Class A misdemeanor, and was found guilty by a jury of promotion of the manufacture of methamphetamine, a Class D felony. He was sentenced to eleven months and twenty-nine days for the driving offense and twelve years for the drug offense, to be served consecutively. On appeal, the defendant argues that the trial court erred in imposing consecutive sentences. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

M. Wesley Hall, IV, Unionville, Tennessee (on appeal); and Brian Belden, Shelbyville, Tennessee (at trial), for the appellant, Jason Larry Russo.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Robert J. Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS

The State's evidence at trial showed that Agent Shane George of the 17th Judicial District Drug Task Force was investigating suspicious purchases of pseudoephedrine from a Walmart in Shelbyville, Tennessee, on August 26, 2014. Based on this investigation, Agent George followed a vehicle driven by the defendant whose passenger had just bought pseudoephedrine at Walmart. Agent George recognized the defendant and knew that his driver's license was revoked or suspended. The defendant stopped at a Rite Aid pharmacy, and another passenger went into the pharmacy but emerged "empty handed" and appeared to be agitated. Agent George made a traffic stop of the defendant's vehicle after it pulled into the driveway of a residence that was a suspected site of methamphetamine manufacturing.

The defendant immediately informed Agent George that he did not have a valid driver's license. With the defendant's consent, Agent George searched the defendant's vehicle, during which he found a box of pseudoephedrine tablets and a quart-sized container of lighter fluid. Pseudoephedrine is the chief precursor of methamphetamine, and lighter fluid is used along with other chemicals, such as lye and ammonium nitrate, to make the drug. Agent George apprised the defendant of his rights, which the defendant waived and agreed to answer questions. The defendant told Agent George that he also had ammonium nitrate in his bedroom in the house and planned to use the chemicals to manufacture methamphetamine in the near future.

Based on these facts, the defendant was indicted in count one for second offense driving on a revoked license and in count two for promotion of the manufacture of methamphetamine. The defendant pled guilty to count one and, after a trial, was convicted by a jury of count two.

The trial court conducted a sentencing hearing at which the defendant's presentence report was first entered into evidence. Agent George then testified that methamphetamine investigations were the main focus of the drug task force. These investigations involved both "one-pot shake and bake labs" such as in the defendant's case, as well as seizures of large quantities of cartel-supplied "ICE methamphetamine" that resulted in prosecution in federal court. He explained that the "home brew labs" took a backseat when the "ICE epidemic" hit but then had a resurgence whenever the task force took a major "ICE" source off the streets. Both home brew labs and imported methamphetamine were major issues in the judicial district. The methamphetamine epidemic was increasing and had crossed racial and economic boundaries. Agent George

-2-

believed that incarceration was a deterrent and that the judicial district's reputation for extended sentences "seems to have a very visible impact."

After making extensive findings on the record, the trial court imposed a sentence of twelve years at 60% as a career offender for the Class D felony drug conviction and a consecutive eleven-month-and-twenty-nine-day sentence at 75% for the Class A misdemeanor driving conviction.

## **ANALYSIS**

The defendant argues that the trial court erred in imposing consecutive sentences "where there was no support for the conclusion that the defendant was a dangerous offender, and there was no significant time span of undetected activity." He also asserts that "consecutive sentencing was excessive considering the nature of the charges and the [defendant]."

In sentencing the defendant, the trial court found, based on disposition dates, that the defendant had at least six separate prior felony convictions, as well as numerous misdemeanor convictions, which were beyond that necessary to classify him as a career offender. See Tenn. Code Ann. § 40-35-114(1). The defendant also had a history of thirteen probation, parole or community corrections revocations. See id. § 40-35-114(8). The court found that the defendant had been released to parole supervision on January 17, 2014 from a ten-year sentence imposed on March 24, 2010 and was therefore on parole when he committed the present offenses on August 26, 2014. See id. § 40-35-114(13). The court considered the proffered mitigating factors that the defendant's conduct did not cause or threaten serious bodily injury and he cooperated with law enforcement, but the court gave the factors minimal, if any, weight. See id. § 40-35-113(1), (9). The court accordingly imposed sentences of twelve years and eleven months and twenty-nine days for the offenses, which the defendant does not contest.

With regard to consecutive sentencing, the court found that there was strong evidence in the record to consider the defendant a professional criminal given his almost non-existent work history. See id. § 40-35-115(b)(1). In particular, the court observed that the defendant had self-reported only one month of work history for "his entire life," and "he's got to be supporting himself somehow, and it's certainly not by working every day." The court also found that the defendant had "an extremely extensive criminal record," consisting of at least six felony convictions and numerous misdemeanors. See id. § 40-35-115(b)(2). Based on such, the court ordered that the defendant's sentences be served consecutively, and the record amply supports the trial court's determination. The defendant suggests that consecutive sentencing was improper because he was not a

"dangerous offender." See id. § 40-35-115(b)(4). However, the trial court did not impose consecutive sentences based on this factor.

The record shows that the defendant is a prolific offender with a consistent record of criminal activity since adulthood who has had a complete lack of success with alternative sentencing. We conclude that the court did not abuse its discretion in imposing consecutive sentences based either on the defendant's being a professional criminal or his extensive record of criminal activity.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE